## 70045. DEPARTMENT OF TRANSPORTATION v. GUNNELS.
### (334 SE2d 197)

BIRDSONG, Presiding Judge.

Condemnation — Charge on Damages. Appellant-condemnor Department of Transportation (DOT) filed a declaration of taking as to a strip of land from a parcel belonging to appellee-condemnee, Gunnels. DOT contemporaneously paid into the registry of the court the amount of $1,265. Gunnels was dissatisfied with the amount of estimated compensation deposited. Accordingly, he filed a notice of appeal. The issues of the value of the strip taken and of the consequential damages to the remainder were tried before a jury. The jury returned a verdict for appellee in the amount of $13,000. DOT's motion for new trial was denied and it appeals enumerating five alleged errors. *Held*:

1. There are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken; and (2) the consequential damage, if any, to the remainder. In order to determine the total damages, a jury is required to follow a five-step procedure: (1) determine the fair market value of the entire tract of property before any part is taken; (2) the value of the partial portion taken considered as a part of the whole tract; (3) the value of the remaining tract but just before the taking; i.e., the value of the remainder as a part of the whole by subtracting the value of a part taken from the value of the entire property; (4) the market value of the remainder just after the taking, considering the negative impact of the separation of the part from the whole; and (5) the positive impact of the taking of the part upon the value of the remainder just after the taking. Obviously steps 4 and 5 dealing with consequential damages must be determined separately from steps 1, 2, and 3 inasmuch as actual value is determined separately from consequential damages which may be added to but cannot be deducted from the value of the part taken.

The trial court in the instant case gave the following jury instruction as to the measure of compensation for the first element: "[T]he measure of damages for the part of the lot actually taken by [DOT] is the difference between the market value of the whole lot just before the taking and the market value of the whole lot immediately after the taking. Now, that's the measure of damages for the part that was actually taken." DOT asserts that this charge as to the measure of compensation for the first element erroneously allows a condemnee in a partial taking to recover the same amount as consequential damages, the second element, and thus twice.

As noted above, in a partial taking condemnation proceeding, the first element of compensation is the market value of the property actually taken. To arrive at the amount of compensation for the part

*actually taken*, the contested charge instructed the jury to determine the difference between the market value of the "whole lot" immediately before and after the taking of a part thereof.

The contested charge is based upon language which appears in *State Hwy. Bd. v. Bridges*, 60 Ga. App. 240, 241 (2) (3 SE2d 907). In *Elliott v. Fulton County*, 220 Ga. 377, 381 (139 SE2d 312), our Supreme Court determined that *Bridges* enunciated "a correct rule." The *Bridges* case, supra, in discussing a workable rule concerning the *value* element held the measure of damages for the part actually taken (not consequential damages to the remaider) was to determine the difference between the market value of the whole lot just before the taking and the market value of the whole lot immediately after the taking. Inasmuch as the "whole" lot after the taking cannot include that which has been separated, the words "whole lot" after taking must mean the whole of the remainder, not considering consequential damages.

In *Elliott v. Fulton County*, supra, the Supreme Court was considering the charge as to *value* given in that case (*Elliott*) as compared with the charge as to value in the *Bridges* case. The Supreme Court clearly differentiated the value determination for the part taken from the consequential damages and concluded that as to the charge dealing with the *value* of the part taken, the *Bridges* charge was correct and could have been applied correctly in the *Elliott* case. This dichotomy in the *Elliott* case was recognized and applied in *Wright v. MARTA*, 248 Ga. 372 (283 SE2d 466). The Supreme Court in *Wright* criticized a charge on consequential damage in *Wright* which was based upon obiter dicta in the *Bridges* charge dealing with consequential damages that authorized the jury to determine *consequential* damage to the remainder of the property by comparing the difference between the market value of the remainder before any part is taken (and before improvements) with the market value of the remainder after separation but after improvements are made. Consequential damages are limited to those that occur as a result of and at the time of the taking and before improvements are made. In *Wright*, supra, the Supreme Court separated that part of the *Elliott* case dealing with the value charge from and expressly overruled the obiter dicta pertaining to the charge on consequential damages while declining to consider and thus declining inferentially to overrule the test set forth in *Bridges* for the determination of value of the parcel taken (fn. 9, p. 376). Therefore, still extant and binding as authority upon us is the approval of *the value* charge in *Bridges* by the *Elliott* opinion.

In the *Elliott* opinion (p. 379), it was pointed out correctly that the removal and isolated consideration of a brief excerpt of a charge can do an injustice to the meaning and clarity of the excerpt when

considered in isolation and not in the context of the entire charge on that subject; citing numerous authorities in support. In this case the trial court, not once but twice, informed the jury that the measure of damages for the taking of the part less than the whole was represented by the fair market value of the property interest taken at the time of the actual taking and more specifically being the difference between the market value of the whole lot just before the taking and the market value of the whole lot immediately after the taking (which we conclude can mean only the whole remainder inasmuch as the "whole lot after the taking" perforce cannot include something that is no longer present). Thus taken in context, the charge in this case as to value still represents the correct rule in this or any condemnation case. *Wright*, supra; *Bridges*, supra.

While the language of *Bridges* setting forth the proper criteria for determining *value* of the property taken in condemnation may be inartful, this court can do no more than point out the inexactness of the language and its potential for confusion. We have neither the right nor power to disapprove a holding in a case that on the very point involved expressly has been approved by our Supreme Court in *Elliott v. Fulton County*, supra. See *State Hwy. Dept. v. Thompson*, 112 Ga. App. 488 (145 SE2d 784).

2. While that portion of the charge in this case that allows the jury to establish consequential damages upon a fair market value determined *after* improvements have been made is erroneous as pointed out in the *Wright* case, the error is actually beneficial to the appellant, DOT, and furnishes no ground for reversal of this case. See *Pilkenton v. Eubanks*, 139 Ga. App. 673, 675 (229 SE2d 146).

3. Contrary to DOT's assertion that there was *no* basis for the admission of expert testimony dealing with the before and after value of the parcel taken nor any credible basis for the consequential damages, we find at least evidence of a minimal quantity to justify its admission and consideration by the jury. One witness initially included personal property in the basis of his value opinion but subsequently deleted that from his basis and made clear that his opinion was based solely on replacement and not comparables. Likewise, the second expert for Gunnels was specific as to value on the parcel taken and he likewise used a replacement approach, giving reasons therefor, as to consequential damages.

All evidence should be admitted as of course unless a valid objection is interposed, the burden being upon the objecting party to state at the time some good and specific reason why it should not be admitted. See *Reid v. State*, 129 Ga. App. 660, 663 (200 SE2d 456). Where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury. *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784); *Cravey v. J. S. Gainer &c.*

*Co.*, 128 Ga. App. 465 (4) (197 SE2d 171). Any evidence is relevant which tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue is relevant. See *Allen v. State*, 137 Ga. App. 755, 756 (224 SE2d 834). Applying these tests to the expert testimony offered by Gunnels, we find no error either in the admission of their opinion testimony nor the court's refusal to strike their testimony once admitted.

4. DOT enumerates as error the giving of a charge whereby the trial court attempted to instruct the jury, in essence, that DOT's estimate of just and adequate compensation contained in the declaration of taking was not competent evidence and should not be considered. DOT's assertion is that, as worded, the instruction could have been understood as also referring to *testimony* offered by DOT's witness as to compensation. In essence then, according to DOT, the instruction might have been construed by the jury as a direction that the testimony of DOT's witness was not competent evidence and should not be considered. We do not agree. The trial court's instruction when placed in context was specifically referring to the original appraisal by DOT's appraiser and the amount paid into the registry of the court at the time of taking. The trial court's direction to disregard that evidence relating to value was connected to the information that the jury was considering the value question de novo and that *earlier* evidence should be disregarded. To believe that the jury could understand the charge required it to reject *all* evidence of value offered by DOT at the de novo consideration is to do violence not only to the charge but also to the competency of understanding of the jury. See *Thomas v. Barnett*, 107 Ga. App. 717 (5) (131 SE2d 818).

On appellate review, a charge must be considered as a whole and each part in connection with every other part of the charge. *Zayre of Ga. v. Ray*, 117 Ga. App. 396, 398 (5) (160 SE2d 648). A charge torn to pieces and scattered in disjointed fragments might seem objectionable, although when put together and considered as a whole is more likely perfectly sound. The full charge presented to this jury, which DOT complains is confusing, when considered as a whole, presents sufficiently clear an appropriate charge. See *Brown v. Matthews*, 79 Ga. 1 (4 SE 13); *Bennett v. Haley*, 132 Ga. App. 512, 517 (5) (208 SE2d 302).

However, in order to be of help to the bench and bar we observe that it long has been recognized that, "in a condemnation case [it is proper] for the judge to cause the amount of the assessors' award to be excised from the papers that [go] out with the jury." *Chandler v. Ala. Power Co.*, 104 Ga. App. 521, 522-523 (18) (122 SE2d 317), rev'd on other grounds 217 Ga. 550 (123 SE2d 767). We believe the same rule should attach when the condemnation is accomplished by a dec-

laration of taking. Cf. *Aiken v. Dept. of Transp.*, 171 Ga. App. 154 (319 SE2d 58). If the estimate of just and adequate compensation is not allowed to go out with the jury, this will obviate the necessity to instruct the jury that it should not consider such estimate. " 'An appeal [in a condemnation by declaration of taking] is a trial de novo on the question of compensation, and it is the function and duty of the jury to pass upon the issues independently of the [estimate of just and adequate compensation]. [Cit.]' [Cit.]" *DeKalb County v. Queen*, 135 Ga. App. 307, 309 (217 SE2d 624). Accordingly, on trial of a condemnation case, ordinarily the estimate should not be allowed to go out with the jury and no charge in that regard should prove necessary.

5. DOT enumerates as error the refusal to give two of its requested charges. It appears that the refused requests concerned DOT"s estimate of just and adequate compensation and its payment of that amount into court. As discussed in Division 2 of this opinion, DOT"s estimate was irrelevant to any issue before the jury. So too was its payment of that amount into court. Cf. *State Hwy. Dept. v. Cantrell*, 119 Ga. App. 241, 242 (1b) (166 SE2d 604). The requests were not erroneously refused.

6. DOT also contends the trial court erred in failing to grant its motion for new trial as being contrary to the evidence. This enumeration is based upon an alleged failure of competent evidence to establish the value of the property taken together with consequential damages as amounting to the $13,000 awarded by the jury.

We are not persuaded by the arguments advanced by DOT. It is certain that the jury's award was within the range of the evidence. *Campo Constr. v. Stembridge*, 138 Ga. App. 555, 557 (226 SE2d 797). Value testimony not only as to the parcel of property taken but also as to consequential damages to a building, its required remodeling, resulting in a more limited use of the property, was given by Gunnels as well as by two experts. Gunnels offered evidence that he had bought and sold property in the county and made inquiry as to market value of property from knowledgeable sources. The experts added additional opinion evidence as to facets of the value question both as to the property taken and the consequential damages. When considered as a whole, the jury was given ample evidence upon which to resolve the value and damage issues. See *Dixon v. Cassels Co.*, 34 Ga. App. 478 (130 SE 75).

Direct testimony as to market value is in the nature of opinion evidence. *Gordon County Bd. Tax Assessors v. Aldon Indus.*, 237 Ga. 527, 531 (228 SE2d 905). One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion as to value. OCGA § 24-9-66. Thus anyone may testify as to value if he has had an opportunity for forming a

correct opinion. The competency of the witness on this subject is usually for the court; his credibility is for the jury. *Central Ga. Power Co. v. Cornwell*, 139 Ga. 1 (1) (76 SE 387); *Dickens v. Adams*, 137 Ga. App. 564, 566 (224 SE2d 468). We are satisfied there was sufficient, competent evidence of value and consequential damages to withstand a motion for directed verdict upon that ground. See *Harris v. State*, 236 Ga. 766, 767 (225 SE2d 263); *Pertilla v. Farley*, 141 Ga. App. 620, 623 (234 SE2d 125).

*Judgment affirmed. Banke, C. J., Sognier, Pope, Benham and Beasley, JJ., concur. McMurray, P. J., and Carley, J., concur specially. Deen, P. J., dissents.*

CARLEY, Judge, concurring specially.

I am constrained to agree with the majority's ultimate conclusion in Division 1 that, under the circumstances, it is beyond this court's power to hold that the giving of the contested charge was reversible error. However, I do not believe that the majority goes far enough in emphasizing why the inartful language appearing in *State Hwy. Bd. v. Bridges*, 60 Ga. App. 240, 241 (2) (3 SE2d 907) (1939) is not proper as a jury instruction as to the determination of the market value of the property actually taken as an element of compensation in a partial taking condemnation action. It is my opinion that the challenged language of *Bridges* evinces such inherent potential for an erroneous double recovery of consequential damages that, were it within this court's power to do so, I would propose that it be disapproved as a jury instruction.

The majority correctly notes that, in a partial taking condemnation proceeding, the first element of compensation is the market value of the property actually taken. To arrive at the amount of compensation for the part *actually taken*, the contested charge instructed the jury to determine the difference between the market value of the "whole lot" immediately before and after the taking of a part thereof. If the market value of the "whole lot immediately after the taking" is deemed to be the market value of the remainder immediately after the taking rather than the market value of the remainder as a part of the whole, it is clear that the amount arrived at by utilizing this method of calculation would result in a figure which already represents the diminution in the market value of *the remainder*. For example, there was testimony in the instant case that the value of appellee's entire parcel before the taking was $33,500 and that, after the taking, one-third of that value had been lost to appellee. Under the contested charge, the jury would have been authorized to find from this evidence that the market value of the strip of appellee's property *actually taken* was approximately $11,000 which is the difference between the market value of the "whole lot" immediately before and

after the taking. However, a significant portion of this $11,000 lost in value would represent the amount that appellee's *remainder* had been damaged as the result of the taking of the strip. It appears that employment of the term "whole lot" in the contested charge, which purports to give the measure of damages for the portion actually taken and considered *as a part of the whole,* is in fact easily confused with a statement of the proper measure of consequential damages to that portion which remains. " 'The proper measure of consequential damages to the remainder [property not taken] is the diminution, if any, in the market value of the remainder in its circumstances just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking.' [Cits.]" *Justice v. Ga. Power Co.,* 164 Ga. App. 599, 601 (298 SE2d 579) (1982). Thus, since the jury in this partial taking case was given the instant charge and was also charged on consequential damages, there clearly was, as DOT asserts, the potential for a double recovery by the condemnee of consequential damages. The value of property is entirely different from the diminution in the value of property. The value of property is to be paid if it is *taken.* The diminution in value to property is to be paid if it is *damaged* as a result of the taking.

In *Elliott v. Fulton County,* 220 Ga. 377, 381 (139 SE2d 312) (1964), our Supreme Court dealt with a contested jury instruction, the literal language of which differs in no small degree from that of *Bridges* and from the wording of the charge in the instant case. A careful review of the decision in *Elliott* also demonstrates that the actual testimony given therein as to the value of the remainder after the taking clearly did *not* take into account consequential damages hereto as the result of the taking. The Supreme Court did not conclude that a charge employing the language from *Bridges* should have been given but, instead, held that *Bridges* "*could* have been adhered to *in this case.*" (Emphasis supplied.) *Elliott v. Fulton County,* supra at 381. On this analysis, it might be possible to construe *Elliott,* not as a blanket endorsement of the *Bridges* language as a correct abstract principle of law for purposes of jury instruction, but as no more than a holding that, considering the entirety of the charge in which it was given and the evidence to which it was to be applied, the *Bridges* instruction did not constitute reversible error in that particular case. However, as the majority points out, the Supreme Court in *Elliott* also held that *Bridges* did enunciate "a correct rule" and I must regretfully agree that that seeming endorsement of *Bridges* constitutes a sufficient bar to this court's utilization of the instant case as a vehicle for holding that a jury instruction in the language of *Bridges* constitutes reversible error by allowing for a double recovery of consequential damages.

Finally, I cannot agree with the majority insofar as it may inti-

mate that the decision in *Wright v. MARTA*, 248 Ga. 372 (283 SE2d 466) (1981), constitutes a reaffirmance by the Supreme Court of its *Elliott* decision. It is clear that the Supreme Court in *Wright* did not inferentially *decline* to overrule *Bridges* and *Elliott*. The Supreme Court merely noted that, other than as to the issue of consequential damages, the correctness of a charge employing language from *Bridges* was not before it. Hopefully, the Supreme Court will have that issue before it, if not in the instant case, at some time in the not too distant future.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

DEEN, Presiding Judge, dissenting.

The charge given by the trial court in *State Hwy. Bd. v. Bridges*, 60 Ga. App. 240 (3 SE2d 907) (1939), relating to (a) the market value of the portion actually taken, and (b) the consequential damage to the remainder is now, and has always been, inartful, confusing, inaccurate, and a cause of potential error wherever used. The first part of the *Bridges* charge relating to the value of the land actually taken should now be affirmatively overruled by this court, as the second part has already been done by the Supreme Court. In *Fulton County v. Elliott*, 109 Ga. App. 775, 779-780 (137 SE2d 477) (1964), this court stated that the portion of the *Bridges* charge there considered was *obiter dictum*. Nevertheless, in reviewing this court's opinion in that case, the Supreme Court held that even if the *Bridges* charge was *obiter dictum*, which they indicated was debatable, it was a correct rule. *Elliott v. Fulton County*, 220 Ga. 377, 381 (139 SE2d 312) (1964).

Our primary concern is that the *Bridges* charge, wherever used, as to the value of property actually taken results in an inate double recovery because it effects a built-in recovery for consequential damages. This same dilemma was faced by this court in *State Hwy. Dept. v. Thompson*, 112 Ga. App. 488 (145 SE2d 784) (1965) over twenty years ago, and we reluctantly but ultimately adhered to the *Bridges* charge there in part because of the Supeme Court's seeming approval of it in *Elliott v. Fulton County*, supra, and chiefly because out of a 3000-word charge, the main objection raised by counsel in that case centered on only one word. See "On Motion for Rehearing" in *Thompson*, supra.

Subsequently, in *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466) (1981), the Supreme Court overruled the last part, or (b) section, of *Bridges*, relating to consequential damages, stating that the correct charge on this particular issue is: "The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of

the taking compared with its market value in its new circumstance just after the time of the taking." The Supreme Court further footnoted in *Wright* that "[t]he correctness of that portion of the *Bridges* charge dealing with the value of the land actually taken is not before us." Under *Hall v. Hopper*, 234 Ga. 625 (216 SE2d 839) (1975), the Supreme Court has stated that stability must yield to justice, and the latest case, if conflicting with an earlier case, is controlling. Whether the Supreme Court's implicit recognition in *Wright*, that *Bridges*, and not *Fulton County v. Elliott*, supra, is the sole authority for the contested charge, and whether *Wright* as the latest ruling of our highest court supercedes and implicitly overrules *Elliott*, is at least debatable.

In summary, while I share the majority opinion's and special concurrence's concern over the potential double recovery inherent with the *Bridges* charge, this court should now go further and overrule the *Bridges* (a) part of that charge, because the Supreme Court has seemingly and arguably removed its imprimatur on the rule announced in *Elliott v. Fulton County*, supra, by what is said in the later case of *Wright*.

Possibly with the three different views presented in this case, the Supreme Court hopefully will grant certiorari and establish the disapproval of *Bridges* and its progeny, so that all may know it is relegated to the "derelicts on the stream of the law" and never to be heard of again. *United States v. Rabinowitz*, 339 U. S. 56, 86 (70 SC 430, 94 LE 653) (1950) (J. Frankfurter). Accordingly, I must respectfully dissent to the majority opinion's upholding of *Bridges* for the reasons set forth above.

DECIDED JULY 15, 1985 —
REHEARING DENIED JULY 31, 1985 —

*Michael J. Bowers, Attorney General, James P. Googe, Jr., Executive Assistant Attorney General, Marion O. Gordon, First Assistant Attorney General, Roland F. Matson, William C. Joy, Senior Assistant Attorneys General, Jack L. Park, Jr., Special Assistant Attorney General*, for appellant.

*Harvey J. Kennedy, Jr.*, for appellee.